UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

HOWARD ENZIO ROBINSON, )
)
Plaintiff, )  Case No. 3:13-cv-00332-AC
)
v. )  **OPINION AND ORDER**
)
CAROLYN W. COLVIN, )
Acting Commissioner of Social Security, )
)
Defendant. )
_____ )

**ACOSTA, Magistrate Judge:**

Howard Robinson ("plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

*Procedural Background*

Plaintiff filed his application for DIB on October 6, 2009, alleging disability as of July, 1990. (Tr. 22.) The Commissioner denied his application initially and upon reconsideration, and he requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 86-87.) At the hearing before the ALJ, plaintiff amended his alleged onset date to November 27, 2006. (Tr. 39.) After the administrative hearing, the ALJ issued a decision on August 12, 2011, finding plaintiff not disabled. (Tr. 22-29.) The Appeals Council denied plaintiff's subsequent request for review, making the ALJ's decision final. (Tr. 1-3.) Plaintiff now seeks judicial review of that decision.

*Factual Background*

Born in December, 1953, plaintiff was 53 years old on his date last insured of March 31, 2007. (Tr. 140.) He alleges disability as of November 27, 2006, due to bipolar disorder, diminishing vision, and high blood pressure. (Tr. 22, 152.) Plaintiff speaks English and has past work experience as an accountant, a data enterer, and a writer. (Tr. 39-40.)

*Standard of Review*

The court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). "Where the evidence as a whole can support either a grant or a denial, [a court] may

Page 2 – OPINION AND ORDER

not substitute [its] judgment for the ALJ's." *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation omitted).

The initial burden of proof rests upon the claimant to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520. First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled. *Yuckert*, 482 U.S. at 140; 20 C.F.R. § 404.1520(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. § 404.1520(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant can still perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. § 404.1520(e). If the claimant can work, she is not disabled; if she cannot perform past relevant work, the burden shifts to the Commissioner. *Yuckert*, 482 U.S. at 141. At step five, the Commissioner must establish that the claimant can perform other work. *Id.* at 142; 20 C.F.R. § 404.1520(e) & (f). If the

Page 3 – OPINION AND ORDER

Commissioner meets this burden and proves that the claimant is able to perform other work which exists in the national economy, she is not disabled. 20 C.F.R. § 404.1566.

### *The ALJ's Findings*

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity since his amended alleged onset date through March 31, 2007, his date last insured. (Tr. 24.) At step two, the ALJ concluded that plaintiff's bipolar disorder was a severe impairment. *Id.* At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *Id.*

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that plaintiff could perform a full range of work at all exertional levels but was limited to "self-paced work not requiring him to be responsible for coworkers." (Tr. 25.) At step four, the ALJ found that plaintiff was able to perform his past relevant work doing data entry and accounting. (Tr. 28.) The ALJ therefore concluded that plaintiff was not disabled. (Tr. 29.)

### *Discussion*

Plaintiff argues that the ALJ erred by: (1) rejecting his credibility; (2) rejecting the opinion of treating physician Dr. Myers; (3) improperly rejecting the lay witness testimony; (4) failing to consider his psychiatric hospitalizations, and (5) failing to call a medical expert to testify at the hearing.

I.  Plaintiff's Credibility

Plaintiff argues that the ALJ improperly rejected his subjective symptom testimony. In *Cotton v. Bowen* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony: The claimant must produce objective medical evidence of an

Page 4 – OPINION AND ORDER

impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom. *Cotton,* 799 F.2d 1403, 1407 (9th Cir. 1986). The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity. *Smolen v. Chater,* 80 F.3d 1273, 1284 (9th Cir. 1996).

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's testimony only if he provides clear and convincing reasons for doing so. *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007) (citing *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1995)). General assertions that the claimant's testimony is not credible are insufficient. *Id.* The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester,* 81 F.3d at 834).

Plaintiff worked for approximately 20 years performing various jobs for Willamette Industries, a forest products company based in Portland. (Tr. 43-46.) Although he worked in a management position at Willamette Industries for several years, he was forced to change jobs and become an accountant because he could not handle the stress of supervising other employees. (Tr. 45.) Plaintiff eventually became unable to perform the accounting job because it required working overtime, which aggravated his mental health condition. *Id.* Accordingly, plaintiff left the accounting job and became a data entry clerk. (Tr. 45-46.) Plaintiff performed the data entry clerk job for "about a year or two," and then worked for approximately five months in another position in accounts payable before requesting a less stressful position. (Tr. 46-48.) Plaintiff's employer offered him a position doing data entry work, but plaintiff quit rather than accept the job doing data entry. *Id.*

After leaving Willamette Industries, plaintiff took another job as an accountant but was laid off in 2001. (Tr. 49, 136.) In 2002 plaintiff signed on with a temporary agency, but was

Page 5 – OPINION AND ORDER

sent out only once to perform accounting work. (Tr. 49-50, 136.) Plaintiff then spent time caring for his mother, doing web design, and writing biographies for elderly people. (Tr. 27, 39-43, 222-23.) He testified that, prior to 2007, he could not perform a regular, 40-hour-per-week job. Tr. 51.

The ALJ rejected plaintiff's testimony regarding the debilitating nature of his mental health condition. (Tr. 26.) First, the ALJ found that plaintiff's testimony that he could not perform a regular work schedule was belied by his activities of daily living. (Tr. 27.) Evidence of an active lifestyle can undermine a disability claimant's credibility, *Bray v. Comm'r*, 554 F.3d 1219, 1226–27 (9th Cir. 2009), and daily activities that are inconsistent with alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). For example, plaintiff was able to work as his mother's caretaker until 2009, despite an alleged onset date in 2007. (Tr. 27, 39-43.) Plaintiff also earned a technical writing degree, and earned money writing personal histories prior to 2007. (Tr. 27, 39-43, 222.) Because plaintiff exhibited a capacity to perform daily activities that contradicted his allegations of debilitating mental health limitations, it was reasonable for the ALJ to infer that plaintiff was not as limited as he alleged. The ALJ thus provided a clear and convincing reason to support his credibility determination. *Rollins*, 261 F.3d at 857.

Plaintiff argues in his Reply Brief that his "activities are not inconsistent with the reasons he cannot work." Pl.'s R. Br., 6. While plaintiff advocates for an alternative to the ALJ's interpretation of the evidence, the Court must affirm the ALJ's interpretation of the evidence because it is rational. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (if the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld); *see*

Page 6 – OPINION AND ORDER

*also Massachi*, 486 F.3d at 1152 ("Where the evidence as a whole can support either a grant or a denial, [a court] may not substitute [its] judgment for the ALJ's").

Second, the ALJ found that plaintiff's subjective symptom testimony was not supported by the medical evidence of record. (Tr. 26-27.) "[L]ack of medical evidence . . . is a factor that the ALJ can consider in his credibility analysis." *Burch*, 400 F.3d at 681. Here, the ALJ noted that very little medical evidence exists in the record to support any functional limitations during the relevant period. (Tr. 26.) Specifically, plaintiff's treatment records do not show that plaintiff was under a disability due to his mental health condition on or before his date last insured, March 31, 2007. The lack of medical records showing severe limitation during the relevant period was a legitimate credibility consideration and provides additional support to the ALJ's determination. *Burch*, 400 F.3d at 681.

Third, the ALJ noted evidence that plaintiff's symptoms were adequately controlled with medication during the relevant period. (Tr. 26-27.) Evidence that a claimant's symptoms are controlled by medication is also a clear and convincing reason to diminish a claimant's credibility. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (impairments that are effectively controlled by medication are not disabling); *see also Elletson v. Astrue*, 319 F. App'x. 621, 622 (9th Cir. 2009) ("The ALJ presented specific, clear, and convincing reasons for rejecting [the claimant's] testimony regarding the severity of her symptoms, noting that her medical records indicated her condition was well controlled with medication"). Hospital records show that plaintiff's bipolar disorder was well-controlled with medication for 10 years preceding the December, 2007 hospital admission. (Tr. 27, 222.) Nora Fairley, M.D., plaintiff's treating psychiatrist since 1997, noted in May, 2009 that plaintiff's symptoms were contained by Seroquel and were previously treated with Lithium. (Tr. 222-23.)

Page 7 – OPINION AND ORDER

On this record, the ALJ provided clear and convincing reasons to reject plaintiff's credibility regarding the nature and severity of his limitations. *Warre,* 439 F.3d at 1006; *Parra,* 481 F.3d at 750. The ALJ provided a reasonable interpretation of the medical evidence in the record, which the Court shall not disturb. *See Burch,* 400 F.3d at 679 (if the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld). The ALJ's credibility determination is affirmed.

II.     Treating Psychiatrist Edmund Myers, M.D.

Plaintiff argues that the ALJ erred by rejecting the opinion of treating psychiatrist Edmund Myers, M.D. Pl.'s Br. 10-11. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle v. Comm'r,* 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester,* 81 F.3d at 830. A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan,* 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler,* 722 F.2d 499, 502 (9th Cir. 1983). In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester,* 81 F.3d at 830. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan,* 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an

Page 8 – OPINION AND ORDER

examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040-41 (9th Cir. 2008).

Dr. Myers began treating plaintiff for bipolar disorder on May 25, 2009, over 2 years after the date last insured. (Tr. 768.) Based on his ongoing treatment relationship with plaintiff, Dr. Myers wrote on July 29, 2011, that plaintiff "is not able to work a productive 40 hour work week." (Tr. 769.) Dr. Myers also speculated that it was "very unlikely" that plaintiff was able to work full time when he began treatment in 2009, and "for some time prior" to that date. (Tr. 27-29, 769.)

The ALJ may reject an inadequately supported, conclusory medical opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Plaintiff's date last insured was March 31, 2007. (Tr. 24.) Here, it is not clear that Dr. Myers's opinion addresses plaintiff's ability to work during the relevant period. To the extent that it does address plaintiff's ability to work during the relevant period, Dr. Myers's opinion was properly accorded little weight because it was brief and conclusory, conflicted with other, more probative medical evidence in the record, and was rendered over two years after the date last insured. (Tr. 27-28.)

Plaintiff argues that the ALJ was required to provide legally sufficient reasons for rejecting Dr. Myerss' opinion that plaintiff was disabled. Pl.'s R. Br. 7. The Court disagrees. Dr. Myers's opinion that plaintiff could not work full time "for some time prior" to the examination date of May 2009 was ambiguous as to the exact onset disability date. It was

Page 9 – OPINION AND ORDER

therefore reasonable for the ALJ to conclude that Dr. Myers' opinion did not reflect on the issue of plaintiff's disability during the relevant period. Although plaintiff provides an alternative, rational interpretation of the evidence, the ALJ's reasonable conclusion must be upheld. *Burch*, 400 F.3d at 679.

Even assuming that Dr. Myers's opinion clearly stated that plaintiff was disabled, the ALJ provided legally sufficient reasons for rejecting it. Dr. Myers' opinion was controverted by the opinion of consulting physician Kordell Kennemer, Psy.D., who opined that plaintiff's mental impairments did not significantly impact his ability to perform basic work activities through his date last insured. (Tr. 589.) The ALJ was therefore required to provide specific, legitimate reasons for rejecting Dr. Myers' controverted opinion. *Murray*, 722 F.2d at 502.

Here, Dr. Myers's opinion conflicted with the medical records of Dr. Fairley, who was plaintiff's treating psychiatrist since 1997. Inconsistency with medical records is a specific, legitimate reason for rejecting a physician's controverted opinion. *Tommasetti*, 533 F.3d at 1041. Dr. Fairley opined that plaintiff's symptoms were contained by medication during the relevant period. (Tr. 222-23.) The ALJ reasonably assigned greater weight to Dr. Fairley's opinion than that of Dr. Myers, which was inconclusive as to plaintiff's functional abilities during the relevant period. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) ("Where medical reports are inconclusive . . . resolution of conflicts in the testimony are functions solely of the [Commissioner].") The ALJ properly resolved the conflict between the opinions of Drs. Myers and Fairley, and the Court finds that the ALJ's decision to favor Dr. Fairley's opinion over that of Dr. Myers's was rational. The ALJ's rejection of Dr. Myers' opinion was supported by legally sufficient reasons and is therefore affirmed. *Bayliss*, 427 F.3d at 1216.

III. <u>Lay Witness Testimony</u>

Plaintiff next argues that the ALJ erred by rejecting the lay testimony of Mike Tuskes, Renee West, and Rick Reber. Pl.'s Br. 11-13. The ALJ must to provide "germane reasons" for rejecting lay testimony. 20 C.F.R. § 404.1513(d)(1); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001). The ALJ need not discuss every witness's testimony, and "if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Inconsistency with other evidence in the record is a germane reason for rejecting the testimony of a lay witness. *Lewis*, 236 F.3d at 511.

Plaintiff's friends Mr. Tuskes and Ms. West submitted a third-party function report on plaintiff's behalf in November, 2009. (Tr. 161.) They stated that plaintiff is "anxious about interaction," has difficulty seeing "fine detail," and has trouble with tasks requiring fine motor skills due to his hand tremors. (Tr. 168-69.) They stated that plaintiff has mood problems and that he swings "dramatically between mania and deep depression, which affects his ability to hold a job." (Tr. 169.)

Plaintiff's former coworker Mr. Reber wrote a letter regarding his relationship with plaintiff and his perceptions of plaintiff's struggle with mental illness on August 1, 2011. (Tr. 217.) Mr. Reber met plaintiff while working at Willamette Industries in 1991. Mr. Reber stated that, after 2005, he met with plaintiff "infrequently" and noticed that "the stress of earning a living seemed more and more on [plaintiff's] mind. [Plaintiff's] eyesight had become very poor and he seemed to have aged greatly." (Tr. 217.) Mr. Reber did not describe any specific functional limitations in his letter. *Id.*

Page 11 – OPINION AND ORDER

The ALJ found that the lay testimony provided little insight into plaintiff's functional capacity during the period under review, and therefore accorded it little weight. (Tr. 28.) First, the ALJ noted that Mr. Tuskes and Ms. West did not address plaintiff's ability to function prior to March 31, 2007. (Tr. 161-69.) Their statement was written in 2009 and addressed plaintiff's functional abilities as of the date of the letter. *Id.* The ALJ therefore provided a germane reason to assign little weight to the lay testimony of Mr. Tuskes and Ms. West, because it did not provide specific information regarding plaintiff's abilities during the period under review.

Second, as the ALJ also noted, "[Mr. Reber's] statement lends very little assistance in determining the claimant's residual functional capacity during the adjudicative period." (Tr. 28.) To the extent that Mr. Reber's testimony suggests serious eyesight-related limitation, such limitation is inconsistent with the evidence of plaintiff's daily activities during the relevant period. As discussed above, plaintiff was capable of providing care for his elderly mother until 2009, including looking after her finances and taking her to appointments. He was also capable of writing professionally for up to 40 hours per week. (Tr. 39-43, 222-23.) These activities suggest a functional level of visual acuity consistent with the RFC. Thus, to the extent that the ALJ rejected Mr. Reber's lay testimony, he had sufficiently germane reasons for doing so. Any limitations implied in Mr. Reber's statement were belied by plaintiff's daily activities during the relevant period. *Lewis*, 236 F.3d at 512.

IV.    Psychiatric Hospitalizations

Plaintiff next argues that the ALJ erred because he failed to consider plaintiff's psychiatric hospitalizations. Plaintiff was hospitalized after the alleged onset date, on December 31, 2007. (Tr. 284.) Hospital treatment notes indicate that the episode was due to apparent lithium toxicity and Wellbutrin, which may have triggered a manic episode. (Tr. 284-86.)

Page 12 – OPINION AND ORDER

Plaintiff was again hospitalized on July, 2009, after Dr. Myers initiated a change in his medication. (Tr. 262-77.)

The ALJ must consider all the evidence and state why he rejects significant, probative evidence. *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003). The ALJ considered plaintiff's hospitalizations. First, he considered Dr. Myers's opinion letter, which discussed plaintiff's hospitalizations. (Tr. 24-27, 768-69.) Second, the ALJ discussed plaintiff's psychiatric hospitalizations at the hearing, and acknowledged that plaintiff suffered from "significant psychiatric issues." (Tr. 36-37.) As discussed above, however, the ALJ credited the treatment notes of Dr. Fairley regarding plaintiff's functioning during the relevant period, and concluded that plaintiff was not disabled. (Tr. 26-27, 29.) Further, it was noted at plaintiff's hospitalization in 2007 that his bipolar disorder was "actually pretty well controlled." (Tr. 286.) Based on a review of the entire record, it was reasonable for the ALJ to determine that plaintiff's hospitalizations were not probative of his functioning during the relevant period of November, 2006 through March 31, 2007. The Court therefore finds sufficient, substantial evidence in the record supporting the ALJ's conclusion, and affirms the ALJ's interpretation of the evidence. *See Howard*, 341 F.3d at 1012; *see also Burch*, 400 F.3d at 679.

V.  Medical Expert

Plaintiff argues, finally, that the ALJ erred because he did not call a medical expert to testify at the hearing. The Regulations instruct the ALJ to call a medical expert when the date of onset of a disabling impairment is not clear from the record and must be inferred. SSR 83-20, available at 1983 WL 31249, at *3. If the ALJ is able to determine that the claimant is not disabled based on the record, however, he need not call a medical expert to testify. *Sam v. Astrue*, 550 F.3d 808, 810-11 (9th Cir. 2008). Here, the ALJ considered medical evidence from

Page 13 – OPINION AND ORDER

before, during, and after the relevant period and was able to determine that plaintiff was not disabled at any time during the relevant period. The ALJ's determination was rational based on the medical record, and the Regulations did not require that he call a medical expert to testify at the hearing. *See id.* at 810-11.

Plaintiff argues that *Sam* is not applicable because in *Sam,* the ALJ determined that the claimant was not disabled "at any time through the date of [the] decision." Pl.'s Br. 8-9, *citing Sam,* 550 F.3d at 810. Plaintiff argues that the Court should instead follow *Armstrong v. Comm'r* in holding that the ALJ was required to call a medical expert to determine a disability onset date. *Armstrong,* 160 F.3d 587 (9th Cir. 1998). *Armstrong* held that the ALJ was required to take testimony from a medical expert because the ALJ determined that the claimant became disabled at some point after the date last insured, "thus raising a question of onset date." *Id.* Because the question of the claimant's onset date was unresolved by the record, the Ninth Circuit held that the ALJ erred by failing to call a medical expert. *Id.*

The claimant in *Sam* also relied upon *Armstrong* to argue that the ALJ erred by failing to call a medical expert to testify at the administrative hearing. *Sam* held, however, that the claimant's reliance on *Armstrong* was misplaced because the ALJ's determination did not raise a question of onset date. *Sam,* 550 F.3d at 811. Similarly, the ALJ in this case did not find that plaintiff was under a disability at any time; thus, the ALJ's conclusion did not raise a question of onset date. Therefore, "the question of *when* [plaintiff] became disabled did not arise and the procedures prescribed in SSR 83-20 did not apply." *Sam,* 550 F.3d at 811; *see also Scheck v. Barnhart,* 357 F.3d 697, 701 (7th Cir. 2004) ("SSR 83–20 addresses the situation in which an administrative law judge makes a finding that an individual is disabled as of an application date and the question arises as to whether the disability arose at an earlier time."). Following the

Page 14 – OPINION AND ORDER

Ninth Circuit's reasoning in *Sam*, the Court finds that the plaintiff's reliance on *Armstrong* is misplaced. The ALJ's decision not to call a medical expert at the hearing is affirmed.

### *Conclusion*

The Commissioner's decision is supported by substantial evidence in the record, and it is therefore **AFFIRMED**.

DATED this 29th Day of July 2014.

JOHN V. ACOSTA
United Staets Magistrate Judge